COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                        NO.
 2-08-267-CV

 

 

IN THE INTEREST OF J.P.,
A CHILD

 

                                              ------------

 

           FROM THE 233RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction

In two issues, Appellant, Office of the Attorney
General of Texas (the AAG@),
appeals the trial court=s judgment discharging Appellee
Joseph Poplett from his child support arrearages based on a mistake in a
release of lien filed by the AG.  We
reverse and remand.

II. 
Factual and Procedural History








Joseph and Jamie Poplett had one child,
two-and-a-half-year-old J.P., at the time of their divorce in 1988.  At the conclusion of the divorce proceedings,
the trial court signed an agreed decree of divorce containing the following
orders:  (1) Jamie is appointed sole
managing conservator of J.P.; (2) Joseph is appointed possessory conservator of
J.P.; (3) Joseph is to pay $33 per week in child support; (4) Joseph=s
employer is to withhold from Joseph=s
disposable earnings the amount owed for J.P.=s
support; and (5) all child support payments are to be made through the Tarrant
County Child Support Office, where they will then be remitted to Jamie for J.P.=s
support.[1]

In May 2007, Joseph filed a AMotion
to Confirm Child Support Arrearage, Motion to Clarify Release of Lien and
Motion for Offset.@ 
He attached to the motion a ARelease
of Child Support Lien@ (the ARelease@) dated
November 23, 2005, that had been signed by Stephen McKenna, a child support
officer with the AG.  The Release stated,
in pertinent part, that:

In accordance with Texas Family Code '
157.322,[2]
this matter has been satisfied pursuant to the child support lien described
below.  This release constitutes a
complete release of any claim the Office of the Attorney General of the State
of Texas has under this specific child support lien, including but not limited
to account number [].[3]









In response, the AG filed a motion to confirm
support arrearages, asserting that, as of August 22, 2007, Joseph owed more
than $47,000 in support arrearages and asking the trial court to enter a
judgment reflecting the arrearages.  The
AG attached a copy of the divorce decree and a schedule of Joseph=s missed
child support payments to its motion.

During a hearing on the parties=
motions, the trial court found that Athe  [Release] is not ambiguous. . . .  [I]t purports to release not only a lien but
the entire obligation by its wording.@  After expressing its preliminary opinion, the
trial court ordered the parties to submit further written arguments, and it
vacated a previously filed administrative writ of withholding.








The AG filed its brief, asserting that the
Release was ineffective to discharge Joseph=s child
support obligation because (1) the Release only applied to the specific bank
account described in the Release; (2) there was a lack of consideration; and
(3) Jamie alone had the authority to discharge Joseph=s obligation.  Joseph responded, arguing that the Release
was unambiguous and therefore constituted a complete release and that the AG
did, in fact, have the authority to enter the Release.  After considering the parties= arguments,
the trial court signed a judgment discharging Joseph=s
alleged arrearages.  In its judgment, the
trial court described the Release as a Acontract@ and an Aagreement,@ labeled
the AG=s
arguments as Apreposterous@ and
without good faith, and took notice of the AG=s Aastounding
action of issuing an administrative writ of withholding to collect monies that
were in dispute and pending.@ 








The AG timely filed a motion for new trial,
denying that it had entered into an agreement with Joseph, contending that it
had filed the Release only because Joseph=s bank
account had been closed, and asserting that, even if the Release unambiguously
discharged Joseph=s arrearages, a mistake of fact
precluded the document from having a discharging effect.  The AG attached to its motion for new trial
an affidavit by McKenna, in which McKenna explained that (1) Joseph had not
made any child support payments between September 1997 and December 2005 and
therefore there was no consideration for the Release in November 2005; (2) the
Release Awas done
because the account at the bank was closed@; and
(3) the Release Aincorrectly stated the lien was
being released under Texas Family Code Section 157.322, when it should have
referred to Texas Family Code Section 157.321.@[4]  After a hearing on the AG=s motion
for new trial, the trial court did not rule on it, and the motion was overruled
by operation of law.[5]  This appeal followed.[6]

III.  Legal
Sufficiency

In its first issue, the AG challenges the legal
sufficiency of the evidence to support the Release.  Specifically, the AG asserts that the
evidence is legally insufficient to show that (1) the Release satisfied the
elements of a contract and (2) the AG had the authority to discharge Joseph=s child
support obligation.








A.  Standard of Review

We may sustain a legal sufficiency challenge only
when (1) the record discloses a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 Tex. L. Rev. 361, 362B63
(1960).  In determining whether there is
legally sufficient evidence to support the finding under review, we must
consider evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  Cent. Ready Mix Concrete Co. v.
Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).








Anything more than a scintilla of evidence is
legally sufficient to support the finding. 
Cont=l Coffee Prods. Co. v. Cazarez, 937
S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby, 935 S.W.2d 114, 118
(Tex. 1996).  When the evidence offered
to prove a vital fact is so weak as to do no more than create a mere surmise or
suspicion of its existence, the evidence is no more than a scintilla and, in
legal effect, is no evidence.  Kindred
v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.  Rocor Int=l, Inc.
v. Nat=l Union Fire Ins. Co., 77
S.W.3d 253, 262 (Tex. 2002).  Any
ultimate fact may be proved by circumstantial evidence.  Russell v. Russell, 865 S.W.2d 929,
933 (Tex. 1993).  A fact is established
by circumstantial evidence when the fact may be fairly and reasonably inferred
from other facts proved in the case.  Id.  However, to withstand a legal sufficiency
challenge, circumstantial evidence still must consist of more than a
scintilla.  Blount v. Bordens, Inc.,
910 S.W.2d 931, 933 (Tex. 1995).

B.  Validity
of the Release

The AG argues that, because Joseph asserted the
affirmative defense of release, it was Joseph=s burden
to show that the Release was valid by proving up the elements of a contract.[7]








1. 
Applicable Law

A release is a contract subject to the rules of
contract construction.  Williams v.
Glash, 789 S.W.2d 261, 264 (Tex. 1990). 
Accordingly, in order to establish the affirmative defense of release,
the party asserting the defense of release is required to prove the elements of
a contract.  Vera v. N. Star Dodge
Sales, Inc., 989 S.W.2d 13, 17 (Tex. App.CSan
Antonio 1998, no pet.).  A release that
is valid on its face, however, constitutes prima facie proof of payment; the
burden of proving otherwise is on the party who denies its validity.  Martin v. Farmers= Nat=l Bank
of Hillsboro, 294 S.W. 240, 241 (Tex. Civ. App.CWaco
1927, no writ); see also Deer Creek Ltd. v. N. Am. Mortgage Co., 792
S.W.2d 198, 201 (Tex. App.CDallas
1990, no writ) (AOnce the release was properly
pleaded, the burden then shifted to appellants to produce evidence that raised
a fact issue as to a legal justification for setting aside the release.@). 

2. 
Analysis








Here, McKenna, an agent of the AG, signed and
acknowledged the Release, and the AG itself asserted in its motion for new
trial that it does not dispute the trial court=s
finding that the Release states that the child support obligation was paid in
full.  Further, the Release provides that
under section 157.322 of the family code the lien has been satisfied.  Section 157.322 states that a release will be
executed when the underlying child support obligation has been paid in
full.  See Tex. Fam. Code Ann. '157.322(a).  The Release, therefore, on its face, purports
to discharge Joseph of the full amount of his arrearages and is a prima facie
rebuttal to the AG=s claim that Joseph owed more
than $47,000 in arrearages.  See Deer
Creek Ltd., 792 S.W.2d at 201; Martin, 294 S.W. at 241.  Thus, because the Release is valid on its
face, the burden shifted to the AG to produce evidence that would result in the
Release being set aside.  See, e.g.,
Williams, 789 S.W.2d at 264 (recognizing that a release is subject to
avoidance on grounds such as fraud or mistake); see also Tamez v. Sw. Motor
Transp., Inc., 155 S.W.3d 564, 570B71 (Tex.
App.CSan
Antonio 2004, no pet.) (recognizing lack of consideration as an affirmative
defense to a release that is valid on its face).[8]  Because the Release is valid on its face, and
because the burden was on the AG to produce evidence challenging the validity
of the Release, we overrule this portion of the AG=s first
issue.








C.  Lack
of Authority

The AG also argues that Jamie alone had the
authority to release Joseph=s full
child support obligation and that there is insufficient evidence to show that
Jamie assigned her rights to the AG.  In
support of its argument, the AG directs our attention to section 231.002(i) of
the family code, which states that the AG only has the authority to release all
or a portion of arrearages if they are (1) confirmed in a judgment and (2)
assigned to the AG under section 231.104(a) of the family code.  The AG contends that, because the arrearages
at issue in this appeal were neither confirmed in a judgment nor assigned to
the AG, the AG lacked the authority to release the entire obligation.

The trial court, on the other hand, found that
Jamie had Arequested services of the [AG]
in collecting child support . . . .  This
request included an assignment of her right to receive and give receipt for
child support . . . [and] . . . expressly or impliedly authorized the [AG] to
enter into the Release . . . .@

1. 
Applicable Law

An agent=s
authority to act on behalf of a principal depends on some communication by the
principal either to the agent (actual or express authority) or to the third
party (apparent or implied authority).  Gaines
v. Kelly, 235 S.W.3d 179, 182 (Tex. 2007). 
Apparent authority is based on estoppel 
arising 








either from a principal knowingly permitting an
agent to hold [himself] out as having authority or by a principal=s
actions which lack such ordinary care as to clothe an agent with the indicia of
authority, thus leading a reasonably prudent person to believe that the agent
has the authority [he] purports to exercise.

Baptist Mem. Hosp. Sys. v. Sampson, 969 S.W.2d 945, 948
(Tex. 1998).  

The rule that an agent can bind his principal by
acts within his apparent authority, however, does not apply to public
officers.  Thermo Prod. Co. v. Chilton
ISD, 647 S.W.2d 726, 733 (Tex. App.CWaco
1983, writ ref=d n.r.e.); see also Fort
Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S.W.2d 660, 663
(1935).  All public offices and officers
are creatures of law.  Fort Worth
Cavalry Club, 83 S.W.2d at 663.  The
powers and duties of public officers are defined and limited by law.  Id. 
Therefore, the act of a public officer must be expressly authorized by
law or implied from the law.  Id.  Public officers may make only such contracts
for the government they represent as they are authorized by law to make.  Id. 








Title IV‑D of the Social Security Act
requires states to Aprovide services relating to the
establishment of paternity or the establishment, modification, or enforcement
of child support obligations . . . .@  42 U.S.C.A. ' 654(4)
(West Supp. 2009).  The family code
designates the AG as Texas=s Title
IV‑D agency and sets forth its rights and responsibilities to collect
child support.  Tex. Fam. Code Ann. ''
231.001, .0011, .101 (Vernon 2008).  The
AG may, among other things, enter into agreements or contracts with federal,
state, or other public or private agencies or individuals for the purpose of
carrying out the agency=s responsibilities under federal
or state law.  Id. '
231.002(c) (Vernon 2008).  The AG may
provide a release or satisfaction of a judgment for all or part of the amount
of the arrearages assigned to it under section 231.104(a) of the family
code.  Id. '
231.002(i).  Section 231.104(a) states
that 

[t]o the extent authorized by federal law, the
approval of an application for or receipt of financial assistance as provided
by Chapter 31, Human Resources Code, constitutes an assignment to the Title
IV-D agency of any rights to support from any other person that the applicant
or recipient may have personally or for a child for whom the applicant or
recipient is claiming assistance. 

Id. '
231.104(a) (Vernon 2008).  Chapter 31 of
the human resources code authorizes the legislature to provide assistance
grants to certain needy persons, including needy dependent children and their
caretakers, subject to specified limitations. 
Tex. Hum. Res. Code Ann. '' 31.001B.044
(Vernon 2001 & Supp. 2008).

2. 
Analysis








Here, there is no evidence that the arrearages
were assigned to the AG under section 231.104(a) of the family code.  In other words, there is no evidence that
Jamie herself, or on behalf of J.P., received any public financial
assistance.  Therefore, because there is
no evidence that Jamie assigned her child support rights to the AG in return
for public financial assistance, and because the AG only has the authority to
release an entire obligation for child support if the support has been assigned
to the AG as a result of the custodial parent receiving public financial
assistance, the law did not authorize the AG to release Joseph=s entire
obligation for arrearages.[9]  Thus, because the law did not authorize the
AG to release Joseph=s entire child support
obligation, the AG was not acting as an agent for Jamie when it entered the
Release.  See Fort Worth Cavalry Club,
83 S.W.2d at 663.  We hold, therefore,
that the Release is invalid as to the arrearages owed to Jamie.  We sustain this portion of the AG=s first
issue.








                                            IV.  Mistake

In its second issue, the AG claims that the
language in the Release that can be read as a release of the entire child
support obligation is not binding because it was included in the Release by
mistake.  The AG, however, first raised
the issue of mistake in its motion for new trial.  Mistake is an affirmative defense that is
waived if not pleaded.  See
Kendziorski v. Saunders, 191 S.W.3d 395, 406B07 (Tex.
App.CAustin
2006, no pet.) (unilateral mistake is an affirmative defense); Marsh v.
Marsh, 949 S.W.2d 734, 745 (Tex. App.CHouston
[14th Dist.] 1997, no writ) (mutual mistake is an affirmative defense); see
also Tex. R. Civ. P. 94 (stating that affirmative defenses must be
affirmatively pleaded or they are waived). 
Therefore, because the AG did not plead mistake as an affirmative
defense, and because the issue was not tried by consent, the AG has waived its
mistake defense on appeal.  See Hollingsworth
v. Hollingsworth, 274 S.W.3d 811, 815 (Tex. App.CDallas
2008, no pet.) (concluding that an affirmative defense raised for the first
time in a motion for new trial is untimely). 
Accordingly, we overrule the AG=s second
issue.

                                          V.  Conclusion








Because we have concluded that the Release is
invalid, we reverse the trial court=s
judgment confirming arrears at $0 and denying the AG=s motion
to confirm support arrearage, and we remand the case to the trial court for
further consideration of the AG=s motion
to confirm child support arrearage.

 

ANNE
GARDNER

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

 

DELIVERED:  August 31, 2009

 











[1]The State later filed a
notice redirecting payments to the Texas Child Support Disbursement Unit.





[2]Section 157.322 of the
Texas Family Code states, in pertinent part, that A[o]n payment in full of
the amount of child support due, together with any costs and reasonable
attorney=s fees, the child support
lien claimant shall execute and deliver to the obligor or the obligor=s attorney a release of
the child support lien.@  Tex. Fam. Code Ann. ' 157.322(a) (Vernon
2008).





[3]The account number has
been omitted for confidentiality purposes.





[4]Section 157.321 of the
Texas Family Code states that

 

[a] child support lien
claimant may at any time release a lien on all or part of the property of the
obligor or return seized property, without liability, if assurance of payment
is considered adequate by the claimant or if the release or return will
facilitate the collection of the arrearages. 
The release or return may not operate to prevent future action to
collect from the same or other property owned by obligor.

 

Tex. Fam. Code Ann. ' 157.321 (Vernon 2008).





[5]During the hearing,
McKenna testified as to his employment with the AG, his interaction with
financial institutions generally and Joseph=s bank specifically, and his signing of the
Release based on the closing of Joseph=s account. 
The trial court concluded that Athe [AG had] made a mistake. . .[a]nd . . . that
the [AG] will fight until hell freezes over to prove that they=re not wrong even when
they know that they are. . . .  [I]f the
[AG] wants to continue this course of bad faith, I will allow the [AG] to do
so, and I will react appropriately.@





[6]Before the AG filed its
notice of appeal, the trial court filed findings of fact and conclusions of
law.  The trial court found, among other
things, that (1) Jamie had requested the AG=s services to collect child support from Joseph and
that she had assigned the right to receive child support to the AG; (2) Jamie=s request for the AG=s services authorized the
AG to file the Release, and (3) the Release was unambiguous.  The trial court concluded that Jamie Aentered into a full and
final release of [Joseph=s] child support
obligation through her authorized agent, the Attorney General of the State of
Texas.@





[7]The AG first raised this
issue in its motion for new trial. 
However, because this is an appeal from a bench trial, a complaint
regarding legal insufficiency may be raised for the first time on appeal.  See Tex. R. App. P. 33.1(d); Tex. R.
Civ. P. 324(a)B(b).





[8]Although the AG asserted
lack of consideration in its original pleadings, it did not raise this on
appeal.  The AG does raise on appeal the
defense of mistake as grounds for setting aside the Release; however, for the
reasons explained below, the defense of mistake is not properly before the
court.





[9]Support rights can also
be assigned under section 231.104(b), which states that A[a]n application for
child support services is an assignment of support rights to enable the Title
IV-D agency to establish and enforce child support and medical support obligations,
but an assignment is not a condition of eligibility for services.@  Tex. Fam. Code Ann. ' 231.104(b).  However, the family code does not provide the
AG with the authority to release the entire obligation of arrearages assigned
to it under this section.  On the
contrary, federal law requires the State to distribute collected support, less
certain fees, to custodial parents who never receive public assistance.  42 U.S.C.A. ' 657(a)(3) (West
Supp. 2009).  Therefore, even if Jamie
had assigned her rights under section 231.104(b) of the family code, the AG did
not have any ownership in the support rights and therefore did not have the
authority to release Joseph=s entire obligation for arrearages.